BASS VS. THE CHICAGO & NORTHWESTERN RAILWAY COMPANY.

RAILROADS.  *Reasonableness of rule as to ladies' car.  Court and jury.  Manner of enforcing the rule.  Rights of male passengers.*

1. The question of the reasonableness of regulations of a railway company, affecting third persons, is generally a mixed question of law and fact; and it is always proper to submit such a question to the jury, under instructions.

2. Considering it as a question of law, this court regards as eminently proper and reasonable a regulation of the defendant company by which one car on each passenger train is set apart, primarily, for the use of women, and men traveling with them.

3. Such a regulation must be *reasonably enforced.*  And the continued validity of the regulation does not depend upon its being uniformly and indiscriminately enforced, against *all* men not accompanied by women.

4. If there be no sitting room in the regular passenger cars for passengers excluded by such regulation from the ladies' car, and there be room to seat them there, they cannot be left standing without breach of the contract of carriage.

5. In such a case, however, the object of the regulation requires that the selection of the persons to be admitted into the ladies' car shall still rest in the discretion of the proper officers of the train; and it is not consistent with the general comfort, convenience and safety of the passengers, for one to assert his right, without license or excuse, and by force, to make his way into a car from which he is excluded by the regulation.

6. In the enforcement of order upon the train, and in the execution of reasonable regulations for the safety and comfort of the passengers, and the security of the train, the authority of the officers, exercised upon the responsibility of the railroad company, must be obeyed by the passengers.

7. There was evidence tending to show that plaintiff, being a passenger on defendant's train, to which a ladies' car was attached, was, with other male passengers, left by the officers of the train without a seat, there being no unoccupied seats except in the ladies' car (and in the smoking car, where he was not bound to remain); and that he and the others stood for some time in the ordinary passenger cars, without attention from the officers of the train. *Held*, that upon these

facts, in the absence of any special excuse for the neglect, the officers were guilty of a breach of duty to such passengers.

8. There was evidence that plaintiff then went to the ladies' car for a seat; that he found the door at first locked; but that, on its being unlocked by a brakeman, he entered, or attempted to enter, the car. The evidence is conflicting as to whether he entered the car peaceably and without being forbidden, or was forbidden and attempted to enter forcibly. In either case, he was forcibly driven upon the platform while the train was crossing a river, where a fall from the platform would probably have proved fatal. *Held*,

(1) That if plaintiff entered the car peaceably, such entrance not being either barred or forbidden by the officers, this must be regarded, under all the circumstances, as equivalent to a *license* to him to enter.

(2) That if plaintiff was thus rightfully in the ladies' car, no officer of the train could rightfully remove him by force, at least without offering him a seat elsewhere.

(3) That in any event the brakeman could not be justified in violently throwing plaintiff on the platform, under the circumstances of special danger above stated.

(4) That if plaintiff's entrance to the ladies' car was barred or forbidden, he had no right to enter, or attempt an entrance by force.

9. The questions of fact as to plaintiff's entrance into the car, and the manner of it, were not submitted to the jury; but they were instructed absolutely, " that if there was no room for him to sit in any of the cars, except the smoking and ladies' cars, he had a right to enter the ladies' car, although there was a regulation to the contrary;" and the court refused an instruction to the effect that " if plaintiff attempted to enter the ladies' car after being refused admittance to it, defendant's servant had a right to use sufficient force to prevent him from entering." *Held*, that such instruction and refusal were error.

APPEAL from the Circuit Court for *Outagamie* County.

The complaint averred, in substance, that on June 4, 1872, the plaintiff was received into one of the defendant's passenger trains at Fond du Lac, to be conveyed as a passenger from that city to Appleton for the sum of $1.45, which was paid; that there was no room in the passenger cars, except the rear car, and plaintiff was compelled to take passage in the rear car, or in the smoking car, which was offensive; that after riding in the smoking car to Oshkosh, he entered the rear car while the

same was crossing the bridge over Fox River at Oshkosh; and that while crossing that bridge, defendant's servants, employed in the management of that train, forcibly seized him and violently pushed and dragged him out of the car upon the platform, without any request to leave, or any explanation, thereby injuring his person and endangering his life. The answer denied most of these averments, and alleged, in substance, that the car into which the plaintiff entered was a ladies' car, set apart by a regulation of the company for ladies, and for gentlemen accompanying ladies, as plaintiff knew; that plaintiff was informed before entering that he could not go into said car, and was requested to take a seat in the car next in front of the ladies' car, in which there were vacant seats; and that defendant's servants used only so much force as was necessary to remove the plaintiff.

At the opening of the trial, defendant's counsel objected to the introduction of any evidence, on the ground that the complaint did not state a cause of action; but the objection was overruled. The evidence for the plaintiff tended to prove the allegations of the complaint, as above stated; that at Oshkosh, when plaintiff sought admission to the rear car, he found the door locked, and stood on the platform until the train was starting, when a brakeman and a friend of his came on the platform; that the brakeman unlocked the door and admitted his friend, and stepped to one side, when the plaintiff passed in, and when going down the aisle he was seized by the brakeman, who attempted to pull him out, and afterwards succeeded by the aid of another person; that the bridge was an open one, and a person falling from the train would be likely to fall into the river; that the plaintiff's hand and arm were cut and bruised in the scuffle, and his ring and cane broken; that he knew the rear car was designated as a ladies' car, but had ridden in that car, and known others to ride in it, unaccompanied by ladies, many times. Evidence was introduced, under objection, tending to show that it was customary for the brake-

man to admit gentlemen without ladies to this car, on receiving a little money or other consideration; that the smoking car was rudely furnished, with wooden seats, and was a second class car; that there was only one other car beside the ladies' car; and that the latter was not full, but all the seats of the other car were filled.

The evidence for the defense tended to show that the rear car was set apart for ladies and for gentlemen accompanying them; that it was the custom, when the brakeman knew there was no room in other cars, from his own observation, to allow gentlemen to go into the ladies' car; that this regulation was for the protection of ladies, and its enforcement rested somewhat in the discretion of the brakeman; that at the time of the difficulty there were vacant seats in the gentlemen's car; that the plaintiff was notified by the brakeman not to go into the ladies' car, and was requested to take a seat in the other car, or to wait until the conductor came; and that the person who assisted in pushing the plaintiff had nothing to do with the train.

The court charged the jury, among other things, in substance, that the regulation excluding gentlemen unaccompanied by ladies from the ladies' car, while there were sufficient room and comfortable seats in other cars, and that admitting others into that car when the brakeman knew that the other cars were crowded, was a reasonable one, and that the company might reasonably enforce it. "But, to entitle the company so to enforce the regulation, I think it should have been observed and kept by the company itself; and that, if you find from the evidence that the company, by its officers, at and before the time when the plaintiff was a passenger, as shown in this case, was in the daily habit of disregarding the regulation, by allowing persons other than ladies, and gentlemen accompanied by ladies, to ride in that car, then the company cannot insist that such other persons, so allowed to enter that car, were not lawfully entitled to their seats therein."

The instructions given and refused as to the right of the plaintiff to enter the ladies' car are sufficiently stated in the latter part of the opinion.

Verdict for the plaintiff, for $4,500; and judgment accordingly; from which the defendant appealed.

*William Ruger*, for appellant:

1. The complaint fails to state a cause of action. There is nothing in the allegations from which it can be inferred that the acts complained of were authorized by the defendant, or done for the purpose of performing any duty to it. The complaint sounds in tort, and fails to connect the defendant with the alleged willful assault. *McManus v. Crickett*, 1 East, 106; *Ellis v. Turner*, 8 Term, 533; *Bowcher v. Noidstrom*, 1 Taunt., 568; *Croft v. Alison*, 6 E. C. L., 528; *Gregory v. Piper*, 17 id., 454; *Timothy v. Simpson*, 25 id., 509; *Lyons v. Martin*, 35 id., 448; *Foster v. Essex Bank*, 17 Mass., 507–517; *Southwick v. Estes*, 7 Cush., 385; *Brasher v. Kennedy*, 10 B. Mon., 28; *De Camp v. R'y Co.*, 12 Iowa, 348; *Cox v. Keahey*, 36 Ala., 340; *Church v. Mansfield*, 20 Conn., 284; *Wright v. Wilcox*, 19 Wend., 343; *Vanderbilt v. Richmond Turnpike Co.*, 2 Coms., 479; *Same Case*, 1 Hill, 481; *Crocker v. R'y Co.*, 24 Conn., 249; *R'y Co. v. Wetmore*, 19 Ohio St., 110; *R'y Co. v. Donahoe*, 70 Pa. St., 119; *Jackson v. R'y Co.*, 47 N. Y., 274; *Isaacs v. R'y Co.*, id., 122, 125; *Edwards v. R'y Co.*, L. R., 5 C. P., 445; *Allen v. R'y Co.*, L. R., 6 Q. B., 65; *Clark v. Bank*, 3 Duer, 241; *Howe v. Newmarch*, 12 Allen, 49; *Holmes v. Wakefield*, id., 580; *Thayer v. Boston*, 19 Pick., 516–7; *Lowell v. R'y Co.*, 23 id., 31; *Coleman v. R'y Co.*, 106 Mass., 160; *R'y Co. v. Derby*, 14 How. (U. S.), 486; *Mitchell v. Crassweller*, 76 E. C. L., 235; *Roe v. B., L. & C. R'y Co.*, 7 Eng. L. & Eq., 546; *Hazleton Coal Co. v. Megargel*, 4 Pa. St., 424–6; *Mali v. Lord*, 39 N. Y., 381; *Poulton v. R'y Co.*, L. R., 2 Q. B., 534; *Woodward v. R'y Co.*, 21 Wis., 309; *Rothe v. Rothe*, 31 id., 572; *K—— v. H——*, 20 id., 239; *Hays v. Lewis*, 17 id., 210; *Harris v. Harris*, 10 id., 467. The following cases, when prop-

erly interpreted, do not change the rule laid down in the fore-
going: *Seymour v. Greenwood*, 6 H. & N., 359; *Bayley v. R'y
Co.*, L. R., 7 C. P., 415; *Moore v. R'y Co.*, 4 Eng., 203; *Goff v.
R'y Co.*, 3 E. & E., 672; *Garretzen v. Duenckel*, 50 Mo., 104;
*Passenger R'y Co. v. Young*, 21 Ohio St., 518; *R'y Co. v. Fin-
ney*, 10 Wis., 393; *Weed v. R'y Co.*, 17 N. Y., 362; *Ramsden v.
R'y Co.*, 104 Mass., 117; *Goddard v. R'y*, 57 Me., 202; *Sherley
v. Billings*, 8 Bush, 147; *Bryant v. Rich*, 106 Mass., 180.
2. There was no testimony tending to show malice on the part
of the defendant, and it was error to authorize any finding of
malice. *Selden v. Cashman*, 20 Cal., 56; *Higgins v. Turnpike
Co.*, 46 N. Y., 24. 3. It was also error, for the same reason, to
submit the question, whether the defendant had not ratified or
directed the act of the brakeman. *Combs v. Scott*, 12 Allen,
493; *Gleason v. Transportation Co.*, 32 Wis., 95, 96; *Vanderbilt
v. Turnpike Co., supra; Roe v. R'y Co.*, 7 Exch., 36. Pleading
in justification does not amount to a ratification. *Buttrick v.
Lowell*, 1 Allen, 172; *R'y Co. v. Broom*, 6 Exch., 314; *Lyons
v. Martin, supra.* 4. The court erred in charging the jury that
if they found " that the act complained of was willful, wanton,
wrongful, and produced injury to the plaintiff, and was either
caused by a regulation of the company or has since been ap-
proved or ratified by the company, then you may, in addition
to compensation to the plaintiff for the personal injury, add
such sum as you deem proper, as punitory damages." *R'y Co.
v. Finney, supra; Wilson v. Young*, 31 Wis., 582; *The Amiable
Nancy*, 3 Wheat., 546; *McGuire v. Steamship Golden Gate*,
McAl. (U. S. C. C.), 104; *Hamilton v. R'y Co.*, 53 N. Y., 25;
*Detroit Daily Post Co. v. McArthur*, 16 Mich., 447; *Hagan v.
R'y Co.*, 3 R. I., 88; *McLellan v. Bank*, 24 Me., 566; *Ackerson
v. R'y Co.*, 32 N. J., 254; *Pickett v. Cook*, 20 Wis., 359; *Stucke
v. R'y Co.*, 9 id., 212; *McKeon v. R'y Co.*, 42 Mo., 79; *Ward-
robe v. Stage Co.*, 7 Cal., 118; *Turner v. R'y Co.*, 34 id., 594. It
is ruled in many cases that the liability of corporations for the
acts of their servants is precisely the same as that of masters

in general. *Ramsden v. R'y Co., supra; R'y Co. v. Schuyler,* 34 N. Y., 49; *Hamilton v. R'y Co.,* 53 id., 29; *R'y Co. v. Rogers,* 38 Ind., 126; *Kellogg v. R'y Co.,* 26 Wis., 233; Ang. & A. on Corp., ch. 11, § 7; Shearman & Redf. on Neg., §§ 119, 120, and cases cited ; *Jeffersonville R. R. Co. v. Rogers,* 38 Ind., 116; *R'y Co. v. Williams,* 55 Ill., 185; *City of Chicago v. Langlass,* 52 id., 259; 53 id., 149, 241; *Dunn v. R'y Co.,* 19 Ohio St., 162; Story on Agency, § 456; 1 Black. Com., 429; *R'y Co. v. Quigley,* 21 How. (U. S.), 202. While corporations transact most of their business through agents, this is not the universal rule, and there have been torts involving the element of mental malice or unlawful intent by the direct action of the corporation. *R'y Co. v. Quigley, supra; Whitfield v. R'y Co.,* 96 E. C. L., 115; *Aldrich v. Press Printing Co.,* 9 Minn., 133; 2 Hilliard on Torts, ch. 34. 4. The evidence in this case would not authorize punitory damages against the brakeman. *Rogers v. Henry,* 32 Wis., 333; *Selden v. Cashman, supra; Higgins v. Turnpike Co.,* 46 N. Y., 24; *Hamilton v. R'y Co., supra.* 5. The damages were excessive. *Goodno v. Oshkosh,* 28 Wis., 584–5; *Spicer v. R'y Co.,* 29 id., 584; *Patten v. R'y Co.,* 32 id., 536; *Rogers v. Henry, supra.*

*Taylor & Sutherland,* for respondent:

1. The defendant is liable for the wrongful act of its employee. *Mil. & Miss. R. R. Co. v. Finney,* 10 Wis., 393; *Goddard v. Grand Trunk R'y Co.,* 57 Me., 202; A. & A. on Corp., § 388; *Brand v. Railroad,* 8 Barb., 368; *Moore v. Railroad,* 4 Gray, 465; *Seymour v. Greenwood,* 7 Hurl. & Nor., 355–6; *Railroad v. Vandiver,* 42 Pa. St., 365; *Railway v. Hinds,* 53 id., 512; *Railroad v. Derby,* 14 How. (U. S), 468; *Landreux v. Bell,* 5 La. (O. S.), 434; *Chamberlain v. Chandler,* 3 Mason, 242; *Nieto v. Clark,* 1 Clifford, 145; *Hewett v. Swift,* 3 Allen, 420; *Holmes v. Wakefield,* 12 id., 580; *Railway v. Broom,* 6 Exch., 324; *Higgins v. Watervliet Turnp. Co.,* 46 N. Y., 23; *Hamilton v. Third Avenue Railroad,* 53 N. Y., 28; *Hazman v. Hoboken Land & Improvement Co.,* 50 id., 53; 1 Redfield on R. W., 511–13, and

Bass vs. The Chicago & Northwestern Railway Company.

notes; *Queen v. Great North of England R'y*, 9 Q. B., 315; *State v. Vermont Central R'y*, 27 Vt., 103; *Maund v. Monmouthshire· Canal Co.*, 4 M. & G., 452; *Southwick v. Estes*, 7 Cush., 385; *Coleman v. N. Y. & N. H. R. R. Co.*, 106 Mass., 160; *Marony v. R'y Co.*, id., 153; Albany Law Journal, Sept. 12, 1874, p. 166. 2. The court properly charged the jury, that if defendant's servant, in attempting to enforce a regulation, with the enforcement of which he was charged, acted in a willful and wanton manner, defendant was liable for the injury done by such servant, and that in estimating the amount of compensation they might take into consideration the insult and indignity, and give damages not only as compensation for plaintiff's strictly physical injuries, but also for his pain and anxiety of mind. *City of Ripon v. Bittel*, 30 Wis., 614; *Spicer v. C. & N. W. R'y Co.*, 29 id., 580; *Wilson v. Young*, 31 id., 574; 24 id., 189; 8 Allen, 480; 1 Cush., 451; 5 Ind., 322; 21 id., 164; *Pickett v. Cook*, 20 Wis., 358; *R'y Co. v. Quigley*, 21 How. (U. S.), 210; *Gilman v. Eastern R. R. Co.*, 13 Allen, 441; *Hamilton v. Third Avenue R. R. Co., supra; Ransom v. N. Y. & Erie R. R. Co.*, 15 N. Y., 415; 23 id., 425; *Fairchild v. California Stage Co.*, 13 Cal., 601; *Masters v. Town of Warren*, 27 Conn., 300; *Leger v. Barkhamsted*, 22 id., 290; *Flike v. B. & A. R. R. Co.*, 53 N. Y., 553; 1 Redfield on R. W., 511–514; *Railroad v. Collins*, 5 Am. Law Reg. (N. S.), 268; 12 Allen, 580; 3 id., 420: 4 Gray, 465; *Chandler v. Broughton*, 1 Crompton & M., 29; *McLaughlin v. Pryor*, 1 Car. & M., 354; *Holmes v. Wakefield*, 12 Allen, 580; 160 Mass., 153, 160; *Moore v. Fitchburg R. R.*, 4 Gray, 465; *Ramsden v. B. & A. R. R.*, 104 Mass., 117; 12 Allen 49; *Jackson v. Second Avenue R. R. Co.*, 47 N. Y., 274; *Higgins v. Watervliet Turnp. Co.*, 46 id., 23; 50 id., 125; 36 Mo., 365, 226, 351; 31 id., 243; 31 Miss., 156; 40 id., 395; 36 id., 660; 8 Bush (Ky.), 147; 17 B. Mon., 110; 57 Me., 202; *Bryant v. Rich*, 106 Mass., 180. 3. The instructions of the court as to punitory damages were proper. *McWilliams v. Bragg*, 3 Wis., 424; *Birchard v. Booth*, 4 id., 67; *Pickett. v. Cook, supra;*

*Matteson v. Curtis,* 11 Wis., 424; *Hamilton v. Spaulding,* 27 id., 361; *Spicer v. C. & N. W. R'y Co.,* 29 id., 580; *Hooker v. Newton,* 24 id., 292; *Morely v. Dunbar,* id., 183; 1 Redf. on R. W., 551, 530, 516; Sedgwick on Dam., 532; *Railroad Co. v. Collins,* 5 Am. L. Reg. (N. S.), 265; *R. R. Co. v. Bailey,* 40 Miss., 395; *R. R. Co. v. Hurst,* 36 id., 660; *R. R. Co. Patton,* 31 id., 156; *Bowler v. Lane,* 3 Metc. (Ky.), 311; *Goddard v. R. R. Co.,* 57 Me., 202; *Sherley v. Billings,* 8 Bush (Ky.), 147; *Bryant v. Rich,* 106 Mass., 180; *R. R. Co. v. Dunn,* 19 Ohio St., 162; *Hopkins v. R. R. Co.,* 36 N. H., 9; 2 Redf. on R. W., 231; 5 La. (O. S.), 434; 3 Mason, 242; 1 Clifford, 145; 17 N. Y., 362; 42 Pa. St., 365; 20 Wis., 358; *Freidenheit v. Edmundson,* 36 Mo., 226; *Kennedy v. R. R. Co.,* id., 351; *Stoneseifer v. Sheble,* 31 id., 243; *Hawkins & Co. v. Riley,* 17 B. Mon., 110; *L. & P. R. R. Co. v. Smith,* 2 Duval, 556; *Taylor v. Grand Trunk R'y,* 48 N. H., 304; *Belknap v. B. & M. R. R. Co.,* 49 id., 358; *C. & N. W. R. R. Co. v. Williams,* 55 Ill. 185; *Caldwell v. New Jersy Steamboat Co.,* 47 N. Y., 282. 4. The damages were not excessive. *Birchard v. Booth,* 4 Wis., 67; 36 Miss., 660; 8 Grey, 45, 63, 64; 9 Johns., 45; 10 id., 443; 2 Redfield on R. W., 221.

RYAN, C. J. The learned judge of the court below charged the jury that the appellant's regulation, setting apart a car in each passenger train primarily for the separate use of women and men traveling with them, is a reasonable one. He did not submit the question to the jury, and both parties appear to have assented to the instruction.

The general rule to be found in the books is, that the reasonableness of such regulations is a mixed question of law and fact, to be submitted to the jury under proper directions. 1 Redfield on Railways, 88. And at least one court, pointing the distinction between by-laws of a corporation, affecting the corporators only, and regulations affecting third persons, has held that the reasonableness of such by-laws rests in their law-

fulness, and is therefore a pure question of law ; while the lawfulness of such regulations rests in their reasonableness, and is therefore a pure question of fact. *State v. Overton*, 4 Zab., 435 ; *Morris & E. R. R. Co. v. Ayres*, 5 Dutcher, 393. We cannot think that the latter proposition is well founded in principle or sustained by authority, as applied to regulations affecting passengers by railroad *in transitu.* Many cases, without passing expressly on the point, deal with the propriety of such regulations as with a question of law. Even in the case in 4 Zabriskie, the court does so *arguendo.* Perhaps it is practically so in plain cases. For courts would not hesitate to overrule the findings of juries against their own clear views of the reasonableness or unreasonableness of such regulations. But there may well be cases of doubt, largely of the nature of questions of fact, in which courts would not be justified in declining to take, or in disregarding, the finding of the jury. It may be said to partake of the character of debateable ground between court and jury, and is so properly held to be a mixed question of fact and law. *Commonwealth v. Power*, 7 Met., 596 ; *Day v. Owen*, 5 Mich., 520. And it is always proper to submit the question, under instructions, to the jury. *Jencks v. Coleman*, 2 Sumner, 221.

In this case, regarding it in the light of a question of law, we entirely concur with the court below in the opinion that the regulation in question is an eminently reasonable and proper one.

In *Jencks v. Coleman*, Mr. Justice STORY likens the duties of carriers of passengers by steamboat to those of innkeepers. And in *Commonwealth v. Power*, SHAW, C. J., after saying that the owners of steamboats and railroads are in this respect on the same footing, adds : " An owner of a steamboat or railroad, in this respect, is in a condition somewhat similar to that of an innkeeper, whose premises are open to all guests. Yet he is not only empowered, but he is bound, so to regulate his house, as well with regard to the peace and comfort of his

guests who there seek repose, as to the peace and quiet of the vicinity, as to repress and prohibit all disorderly conduct therein ; and of course he has a right and is bound to exclude from his premises all disorderly persons, and all persons not conforming to regulations necessary and proper to secure such quiet and good order."

This authoritative comparison of the duties of railroad companies to their passengers, to those of innkeepers to their guests, is very suggestive of the scope of the former.   See *Day v. Owen* and *Jencks v. Coleman, supra ; Chamberlain v. Chandler*, 3 Mason, 242 ; *Nieto v. Clark*, 1 Clifford, 145

And of course the power to regulate must be commensurate with the duty to care for and protect.   1 Redfield, 88–92.

The use of railroads for the common carriage of passengers has not only vastly increased travel generally, but has also specially led women to travel without male companions.   To such, the protection which is a natural instinct of manhood towards their sex, is specially due by common carriers.   *Chamberlain v. Chandler* and *Nieto v. Clark, supra.*   And, in view of the crowds of men of all sorts and conditions and habits constantly traveling by railroad, it appears to us to be not only a reasonable regulation, but almost if not quite a humane duty, for railroad companies to appropriate a car of each passenger train primarily for women and men accompanying them ; from which men unaccompanied by women should be excluded, and even women or men accompanying women of offensive character or habits ; so as to group women of good character on the train together, sheltered as far as practicable from annoyance and insult.   It is a severe comment on our civilization that such a regulation should be necessary ; but the necessity is patent to all experience and intelligence.   And the regulation not only comes within the principle established in all the cases we have examined, but has judicial sanction. *State v. Overton, supra ; Pittsburgh, F. W. & Ch. R. R. Co. v. Hinds*, 53 Pa. St., 512.

It is not enough that the regulation is reasonable : it must be reasonably enforced. And we are unable to agree with the learned judge of the court below in the opinion that such a regulation, to remain valid, must be strictly and uniformly enforced. We cannot think that the occasional use or even abuse of a discretion to admit into the ladies' car persons not admissible under the letter of the regulation, can operate to abrogate the regulation itself. There may well be cases of age, or infirmity, or other ground of discrimination, in which the regulation need not be rigidly enforced. And the regulation for the convenience of some passengers should not be enforced to the violation of the rights of other passengers. Railroad companies have no right to overcrowd their trains to the inconvenience of passengers. 2 Redfield, 217 ; *Pittsburgh, F. W. & Ch. R. R. Co. v. Hinds, supra.* Passengers are entitled to seats, and it is the duty of the officials of the train to see that they have them. If passengers appropriate more than one seat each, leaving others without seats, it is not the duty or the right of the latter to wrangle or struggle with the former for seats ; it is the duty of the proper officers of the train to regulate that. It is essential that good order should prevail on every passenger train ; and it is not likely always to prevail on crowded trains, if the dignitaries of the train leave the passengers to shift and scramble for themselves. And if there be not sitting room for passengers excluded by the regulation from the ladies' car, and there be room to seat them there, they cannot be left standing without breach of the contract of carriage. But, in such case, in the admission of male passengers into the ladies' car, the object of the regulation must be regarded and observed ; and it must necessarily rest in the discretion of the proper officials of the train to select those to be admitted. This discretion must be somewhere ; and the good order of the train and the object of the regulation are not compatible with the choice of passengers to make their way, at will and without license or excuse, into a car from which the regulation primarily ex-

cludes them.   In such cases, as in others, it would not comport with the comfort and convenience of the passengers, not always with their safety, for some of them to assert their rights with a strong hand.   And the safety and comfort of the passengers generally are not to give way to the safety or convenience of one or of a few.   *Day v. Owen, supra.*   For all violations of their rights as passengers, all passengers have their remedy by action on the contract of carriage ; but they must submit to the necessary and reasonable discipline of the train.

" When carriers undertake to convey passengers by the powerful but dangerous agency of steam, public policy and safety require that they be held to the greatest possible care and diligence.   The personal safety of passengers should not be left to the sport of chance or the negligence of careless agents. Any negligence, in such cases, may well deserve the epithet of *gross*."   *P. & R. R. R. Co. v. Derby*, 14 How., 468.   " The right and duty of the defendant in running the road, to establish and enforce reasonable regulations for the government of the line, has been frequently recognized by the courts in this country.   The safety and security of the traveling public, as well as the interest of the railroad itself, require that the right and duty exist and be enforced.   Upon that ground it has been held that the defendants and their servants may not only exclude those who refuse to pay their fare or to comply with such reasonable regulations as are made for their government, but they may also rightfully inquire into the habits or motives of those who claim the right of passage.   While the law requires of the company the adoption of such regulations as are necessary for the safety and convenience of passengers in their trains, they have also the right to adopt such reasonable regulations as are necessary for their own security ; and those regulations are to be mutually observed.   If they are not complied with by passengers, the company may not only refuse them admission within their cars, but, if they are within, they may remove them."   *Stephen v. Smith*, 29 Vt., 160.

These views are sanctioned by many reported cases; and they impose great responsibility on railroad companies, and devolve great correlative power upon officers in charge of passenger trains. These officers may be guilty of acts of arbitrary oppression, beyond endurance, towards passengers, which might warrant resistance. But we feel warranted by principle and authority to hold that, in the enforcement of order on the train, and in the execution of reasonable regulations for the safety and comfort of the passengers, and for the security of the train, the authority of these officers, exercised upon the responsibility of the corporations, must be obeyed by passengers, and that forcible resistance cannot be tolerated. They act on the peril of the corporation, and their own. Indeed, as that fictitious entity, the corporation, can act only through natural persons, its officers and servants, and as it of necessity commits its trains absolutely to the charge of officers of its own appointment, and passengers of necessity commit to them their safety and comfort *in transitu*, under conditions of such peril and subordination, we are disposed to hold that the whole power and authority of the corporation, *pro hac vice*, is vested in these officers; and that, as to passengers on board, they are to be considered as the corporation itself; and that the consequent authority and responsibility are not generally to be straitened or impaired by any arrangement between the corporation and the officers: the corporation being responsible for the acts of the officers in the conduct and government of the train, to the passengers traveling by it, as the officers would be for themselves, if they were themselves the owners of the road and train. We consider this rule essential to public convenience and safety, and sanctioned by great weight of authority. *Commonwealth v. Power, Day v. Owen, Jenks v. Coleman, Pittsburgh, F. W. & Ch. R. R. Co. v. Hinds, P. & R. R. R. Co. v. Darby, Chamberlain v. Chandler, Nieto v. Clark, Stephen v. Smith, supra; Moore v. Fitchburg R. R. Co.*, 4 Gray, 465; *Vinton v. Middlesex R. R. Co.*, 11 Allen, 304; *Coleman v. N. Y. & N. H. R. R. Co.*, 106 Mass., 160;

*Sullivan v. P. & R. R. R. Co.*, 30 Pa. St., 324; *Penn. R. R. Co. v. Vandiver*, 42 id., 365; *Sherley v. Billings*, 8 Bush, 147; *Higgins v. Watervliet T. Co.*, 46 N. Y., 23; *Balt. & O. R. R. Co. v. Blocker*, 27 Md., 277; *Ch., B. & Q. R. R. Co. v. Parks*, 18 Ill., 460; *Goddard v. Grand T. R. R. Co.*, 57 Me., 202. See 2 Redfield, 220, 230.

On the trial in the court below, there was evidence tending to show that the respondent, being a passenger on the appellant's train, to which a ladies' car was attached, was, with other male passengers, kept by the officers of the train without a seat, there being no unoccupied seats, except in the ladies' car; that he had been in the smoking car, in which he was not bound to remain; and that he and others stood for some time in one of the ordinary passenger cars, without attention from the officers of the train. If these were the facts, without some special excuse for the neglect, it is plain that the officers of the train were guilty of breach of duty to the passengers so left standing. There was evidence tending to show that the respondent then went to the ladies' car for a seat; that he found the door at first locked; but that, on its being unlocked by a brakeman, he entered or attempted to enter the car. Whether he entered the car peaceably and without being forbidden to enter it, or whether he was forbidden and attempted to enter the car forcibly, were questions on which the evidence was conflicting; and, under the instructions given to the jury, the verdict does not determine the fact. In either case, it does appear that he was forcibly driven upon the platform of the car, while the train was crossing a river, when a fall from the platform would probably have proved fatal to him.

In the circumstances stated, if such were the truth, we cannot think that the respondent was bound to wait the slow pleasure of the officials of the train to give him a seat, if the ladies' car was open to his peaceable entrance. If so open, we think that he might well enter it for a seat; for, as we have said, the regulation for convenience should give way to the

right of contract. And if the officers of the train neither furnished him with a seat nor forbade or barred his entrance into the ladies' car, we are inclined to regard it as equivalent to their license to him to enter it. But if his entrance were barred or forbidden, we cannot hold that he could of right attempt by force to enter the car. If, however, being neither barred nor forbidden, he entered the car peaceably and was peaceably in it, where there was a seat for him, to which he was entitled and which he could not find elsewhere, we hold that he was there rightfully. Being there rightfully, under his contract of carriage, we cannot recognize any right of any officer of the train to remove him by force; certainly not without proffering him a seat elsewhere. And we deem it our duty to say that no circumstances could have justified the brakeman, if such were the fact, in violently throwing the respondent on the platform while the train was moving over the bridge. Some discretion and humanity are as essential to such persons as zeal, due or undue.

The questions of fact as to the entrance of the respondent into the car, and the manner of it, as we have stated them, and on which the respondent's right to recover largely depends, do not appear to us to have been properly submitted to the jury, with proper instructions to guide them in their finding.

On the contrary, the learned judge refused the appellant's request to charge the jury that, if the respondent attempted to enter the ladies' car, after being refused admittance to it, he was a wrongdoer in it, and the appellant's servant had a right to use sufficient force to prevent him from entering the car. And he did charge the jury that, if there was no room for the respondent to sit in any of the cars except the smoking and ladies' cars, he had a right to enter the ladies' car, although there was a regulation to the contrary.

The instruction refused and the instruction given make it manifest that the learned judge was of opinion that, being without a seat in the other cars, the respondent had a right to

enter the ladies' car, by force, after being forbidden to enter it. There was no qualification of the charge given. And the jury must have understood it as we do.

With the views which we have already expressed, we have no choice but to hold this charge to have been erroneous, and to reverse the judgment of the court below and remand the cause for a new trial.

*By the Court.* — It is so ordered.