## PULLMAN PALACE CAR COMPANY v. HAMPTON BALES.

### No. 3106.

1.   **Husband and Wife—Pullman Sleeping Car.**—When a berth in a sleeping car is contracted for by the husband either with an express understanding that it is engaged for the joint occupancy of himself and wife or under circumstances that are not misleading within themselves, the refusal to permit such joint occupancy without other reason than the difference of sex, and when such refusal would be a breach of contract, will give the injured party a right for damages.

2.   **Case in Judgment.**—Husband and wife were passengers accompanied by his mother.   The wife with consent of the husband made a contract and paid for one berth in a sleeping car, while he made one for another.   The wife having passed across the aisle from her berth to that of her husband was by the employes on the sleeper ordered back to her own.   In an action by the husband for damages, *held:* Unless the wife acquired by contract the right to occupy at the same time two berths it is evident that the refusal to permit her to occupy the one paid for by her husband would not be a breach of any contract.   As no contract was shown for her to occupy more than one berth there was no cause of action shown.

3.   **Duty of Servants in Sleeping Car.**—It was the duty of the servants of the appellant to investigate matters apparently showing improper conduct by passengers in the sleeping car; but such investigation should be conducted without rudeness or greater

publicity than necessary. *Held*, however, that rudeness of manner in·discharging the duty, not accompanied by violence, would not of itself be a cause of action, although it might be considered in aggravation of damages had a cause of action otherwise .existed.

APPEAL from Tarrant.    Tried below before Hon. R. E. Beckham. The opinion gives a statement.

*Percy Roberts* and *R. C. Willing*, for appellant.—1.    The court erred in rendering judgment for the plaintiff.    Wood's Mayne on Dam., 75; Cool. on Torts, 272; Railway v. Levy, 59 Texas, 563; Railway v. Weber, 21 Am. and Eng. Ry. Cases, 418.

2.    An action for injury to feelings and mental suffering can not be sustained unless accompanied by some physical injury.

*Capps & Canty*, for appellee.—The judgment of the court is fully sustained by the law and the evidence.    3 Suth. on Dam., pp. 259, 260; Cool. on Torts, pp. 63–66; Crocker v. Railway, 36 Wis., 657.

HENRY, ASSOCIATE JUSTICE.—This suit was brought by appellee to recover damages.    The plaintiff asked judgment for the sum of $1950, and on the trial without a jury that sum was awarded him.

The appellant complains that:

"The court erred in rendering the judgment for the plaintiff against the defendant, because the judgment of the court on the evidence was contrary to the law and was not supported by the evidence, in this:

"1.    The evidence showed that defendant's servants in causing the plaintiff's wife to leave the berth acted with no personal animosity to plaintiff or his wife, but that they acted in good faith in striving to prevent what they honestly believed to be an infraction of the rules they were appointed to enforce; and the acts and conduct of plaintiff and his wife were such as to cause the servants of the defendant to believe that they were not husband and wife.

"2.    It was not shown by the evidence that either the plaintiff or his wife suffered any actual damage, or that the acts of the servants of the defendant caused them any physical suffering, or that they were entitled to exemplary damages.

"3.    The evidence showed that the wife of plaintiff had no right to occupy the berth she was asked to leave.

"4.    The judgment was excessive in amount."

The plaintiff was the only witness in the cause.    His testimony was in substance as follows:

Plaintiff, his mother, and his wife were on their way from Kentucky to Texas.    Out of St. Louis they took two lower berths in one of defendant's sleeping cars—one for the mother and one for plaintiff and

his wife. The berths were directly opposite each other. All parties went to bed about the same time. Plaintiff's mother was old and needed assistance in getting to bed, and his wife went over to her berth and assisted her, and after doing that she crossed to plaintiff's berth, and to avoid publicity she raised the curtains of her husband's berth and in passing across the aisle from one berth to the other was protected by them from view. There were two sleeping cars attached to the train and two sets of porters and conductors, who were back and forth from one car to the other.

At Walnut Ridge the party left the sleeping car and went into a passenger coach, in which they remained until the train reached Texarkana, the next night. Reaching Texarkana about dark, the plaintiff went into the Pullman car to secure berths for his wife and mother and himself. He told the porter that he wanted two lower berths for himself and two ladies, and engaged them opposite each other. He then went back to the passenger coach and carried their valises, etc., into the Pullman car and returned for his wife and mother and accompanied them into the sleeper. The conductor came through the car and approached plaintiff's wife and mother, who were sitting together, and his wife paid him for a berth. Plaintiff during this time was arranging the valises. The conductor then came to the plaintiff and he paid him for a berth. Plaintiff and the ladies ordered coffee, and having a lunch in their valises ate supper together. The plaintiff then went to the smoker in the back end of the car, where he remained until bed time, 9 o'clock. The porter came around and arranged the berths and put the valises away and let the curtains down. Plaintiff's wife assisted his mother to undress, and while she was assisting her plaintiff undressed and went to bed. Plaintiff's wife after she had put plaintiff's mother to bed went over to plaintiff's berth. She was partly undressed at the time and had her clothes unfastened. She slipped across under the curtains. The porter then came to plaintiff's berth and pulled the curtains aside and said: "The Pullman Car Company does not allow such proceedings," and told plaintiff that his wife must leave his berth. Plaintiff told him that the lady was his wife and the lady in the opposite berth was his mother, and asked him if a man and his wife had not a right to occupy the same berth. He went away and brought the Pullman conductor. The porter stood at one end of the berth and the conductor at the other, and they took hold of the curtain of the berth, the porter pulling one half of the curtain aside and the conductor the other half, exposing plaintiff and wife to view, undressed. The conductor said: "Here, the Pullman Car Company does not allow any such proceedings as this." Plaintiff told him that the lady was his wife and that they were traveling together; that the night before they slept in the car just in the rear of the one in which they were then traveling, and that the other lady was his mother. He said:

"Well, that don't go," in a very insolent manner. Plaintiff told him that they thought they had the right to occupy that bed, as they were traveling together. He said, "That's all right, that don't go." Plaintiff told him they had slept together the night before in the other car. He said, "The Pullman Car Company don't allow anything of this kind." Plaintiff then told his wife to go to the other berth with his mother. Plaintiff got up and staid up nearly all night, being very much hurt and mortified.

The plaintiff testified that the porter could not have been personally acquainted with the parties.

The conductors and porters of the two sleeping cars came all the way from St. Louis, and the one in the car taken at Texarkana saw plaintiff in the one taken at St. Louis, and plaintiff testified could not have avoided seeing him with his wife during the whole trip.

No question can exist with regard to the right of a husband and wife to occupy the same berth in a sleeping car. At the same time the proprietors of such conveyances imperatively owe to the traveling public the duty of seeing that men and women who do not occupy to each other that relation shall not occupy the same one.

Usually there need exist no difficulty about preserving and enforcing both the right and the duty. When a berth is contracted for by the husband, either with an express understanding that it is engaged for the joint occupancy of himself and wife or under circumstances that are not misleading within themselves, the refusal to permit such joint occupancy, without other reason than the difference of sex, and when such refusal would be a breach of contract, would give to the injured party a right of action for damages, in which might be considered circumstances of insult and aggravation attending the breach.

In this case the wife, with the consent of her husband, made a contract for one berth while he made one for another. Unquestionably the wife acquired the right to occupy the one for which she paid, and an unexcused expulsion of her from that would have been a breach of contract for which plaintiff could have recovered damages. Unless she acquired by contract the right to occupy at the same time two berths, it is evident that the refusal to permit her to occupy the one paid for by her husband would not be a breach of any contract. As it can not be claimed that the evidence shows a contract for the wife to occupy more than one berth it results that a case is not shown for the recovery of damages for the breach of a contract.

There was no assault or battery, nor is there a cause of action stated for defamation.

It may be admitted that there was nothing improper in the conduct of the plaintiff and his wife when their relationship to each other is considered. And yet it can not be affirmed that their actions were not under the circumstances calculated to excite the suspicion and arouse

the vigilance of defendant's servants and make it their duty to investigate the matter and apply a remedy for the wrong, if one was found to exist.    It was a duty which defendant owed to plaintiff and his wife, as well as to the other passengers in the coach, that the investigation should be conducted without rudeness or greater publicity than was absolutely necessary.

The evidence indicates that the defendant's servants did not discharge their duty in this manner, but that on the contrary they were guilty of great rudeness.   Such conduct would properly be considered and given weight in estimating the amount of damage if a cause of action otherwise existed.    But we have been unable to find a precedent for holding that there exists in favor of plaintiff a cause of action growing out of the manner alone in which the servants of defendant discharged an apparent duty.

We conclude that the facts fail to show a cause of action, and we therefore reverse the judgment and render one in favor of the appellant.

*Reversed and rendered.*

Delivered December 2, 1890.

*Capps & Cantey*, for rehearing.—Granting that the appellant company had the right to eject plaintiff's wife from the berth she was occupying, still in exercising that right and performing that duty the resort to unnecessary violence and rudeness would give plaintiff a cause of action in which might be shown all the circumstances of insult and indignity.  Hutch. on Car., sec. 591 *et seq;* Thomp. on Car. Pas., 377; 1 Am. and Eng. Encyc. of Law, 745; Cool. on Torts, 395; Cool. on Torts, 535, and note; Kline v. Railway, 37 Cal., 400; Bass v. Railway, 36 Wis., 450; Healey v. City Passenger Co., 28 Ohio St., 23; Railway v. Vandiver, 42 Pa. St.; 82 Am. Dec., 525; 62 Id., 381.

The motion overruled March 13, 1891, Chief Justice Stayton dissenting.

### DISSENTING OPINION ON MOTION.

STAYTON, CHIEF JUSTICE.—Appellee and his wife were passengers and entitled to transportation, and it is not believed that the fact that the wife may have paid for one berth and the husband for another should have any bearing on the decision of this case; for it can not be denied that the husband had the right under his contract with the company to admit his wife into the berth in which they were, she being a passenger.

This being true, the action of the servants of this company violated his right secured by contract when they compelled her to leave that berth and take another, and this in my judgment gave cause of action.

In estimating the damages to which appellee would be entitled, a cause of action existing, it would be proper to take into consideration on the one side the rude, unnecessary, and offensive behavior of the company's servants, and on the other the acts of appellee or his wife tending to induce the belief on the part of the servants that their relation was not that of husband and wife.

I think the motion for rehearing should be granted, and there being no claim that the damages awarded are excessive, that the judgment should be affirmed.