COOMBS, Respondent, vs. SOUTHERN WISCONSIN RAILWAY COMPANY, Appellant.

*December 9, 1915—January 11, 1916.*

*Street railways: Reasonable rules: Passenger on rear platform: Refusal to enter car: Right to eject: Questions for jury.*

1. A rule of a street railway company that "the conductor shall request passengers to enter the car and move forward, endeavoring to keep the rear platform clear at all times," is a proper and reasonable regulation which the conductor is authorized to enforce and with which passengers must comply if they can reasonably do so.

2. There being ample standing room in the aisle of a car for a passenger who was on the rear platform, his wilful refusal, when requested by the conductor, either to step in or leave the car justified the conductor in attempting to remove him from the car; and in an action for an alleged wrongful attempt to eject him it was error to submit to the jury the question whether the plaintiff "ought, as a reasonably careful and prudent person, to have entered the car" when the conductor requested him to do so.

3. Where in such case the conductor aided by the motorman wholly failed to use sufficient force to overcome the passenger's resistance, no cause of action for a wanton or reckless assault was shown.

APPEAL from a judgment of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Reversed.*

This is an action to recover damages for injuries alleged to have been caused by an attempted wrongful ejection of plaintiff by one of defendant's conductors from a street car. Plaintiff alleges that his hand was cut and torn and that he suffered great mortification and injury to his feelings by reason of such unlawful assault and battery.

The defendant operates a street-car system in the city of Madison. The plaintiff, a man about forty-four years of age, boarded one of defendant company's pay-as-you-enter street cars at the corner of Ingersoll and Jenifer streets of the city. Five other persons boarded the car at this point.

The plaintiff was the last of this group of persons to step into the vestibule of the car.   The other passengers paid their fares and passed from the vestibule into the car.   The plaintiff after paying his fare stepped back into the left-hand portion of the rear vestibule and remained standing there.   The conductor asked the plaintiff to step into the car, but the plaintiff indicated that there was no room in the car and stated that he would remain where he was.   The conductor then told plaintiff to step into the car or get off, and that if plaintiff did neither he would stop the car and eject plaintiff. The plaintiff made no response to this remark of the conductor, but declined to step into the car.   The evidence is not clear as to whether the conductor attempted to eject plaintiff at the next crossing (Brearly street) or at the third crossing (Livingston street).   The testimony as to the number of people standing in the aisle of the car varies widely; one witness estimates it as high as from twelve to fifteen, while other witnesses estimate it at a less number.   The conductor stopped the car at one of these crossings and told the plaintiff to get inside or he would put him off.   Plaintiff refused to step into the car, whereupon the conductor signaled for the motorman to come to the rear platform and then took hold of plaintiff and attempted to eject him from the car.   He did not succeed because of the resistance offered by the plaintiff. The motorman advised letting the matter rest for the present and reporting it to the inspector upon reaching the business district of the city.   The conductor then desisted in his effort and the plaintiff rode about a mile to his destination in the rear vestibule, where the conductor reported the entire matter to the inspector.   The evidence tends to show that several passengers got on the car within the next two or three blocks after the plaintiff had boarded the car, while only a possible two left the car, and that all of these passengers found standing room inside of the car.   It also appears that there was standing room in the aisle of the car for at least

eight to ten more passengers when plaintiff was requested to step into the car, though the aisle appeared to be filled near the entrance where the plaintiff stood.

The court submitted the case to the jury, who rendered a special verdict finding (1) that *Mr. Coombs,* under the circumstances, was not, as a reasonably prudent man, required to step into the car when asked to do so by the conductor; (2) that the conductor used more force than was reasonably necessary to eject plaintiff from the car; (3) that the conductor was actuated by malice and vindictiveness in attempting to eject the plaintiff; (4) that the defendant company ratified such malicious and vindictive action; (5) that such malicious or vindictive action on the part of the conductor was not within the scope of his employment; (6) assessed plaintiff's compensatory damages at $350; and (7) assessed plaintiff's punitory damages at $50. The court denied the right to punitory damages and judgment was entered for the plaintiff in the sum of $350 compensatory damages, together with the costs and disbursements of this action. From such judgment this appeal is taken.

For the appellant there was a brief by *Jones & Schubring,* and oral argument by *E. J. B. Schubring.*

For the respondent there was a brief by *Olin, Butler, Stebbins & Stroud,* and oral argument by *Ray M. Stroud.*

SIEBECKER, J. The defendant company had adopted the following as one of its regulations for the conduct of its business: "The conductor shall request passengers to enter the car and move forward, endeavoring to keep the rear platform clear at all times." Mr. Montgomery, vice-president and superintendent, testified that this rule was promulgated and enforced to promote safety of passengers and efficiency in service in the conduct of the business. An orderly and expeditious management is essential to carry on a street-car business and the requirements imposed on passengers by this

rule tend to promote these objects.   *Yorton v. M., L. S. & W. R. Co.* 54 Wis. 234, 11 N. W. 482; *Bass v. C. & N. W. R. Co.* 36 Wis. 450.   The provisions of the regulation are therefore proper and reasonable and passengers must conform therewith under all circumstances and conditions when its requirements can be reasonably enforced.   The question arises, Was the plaintiff justified in refusing to comply with the conductor's attempted enforcement of the rule at the time here in question?   It was held in the *Yorton Case* that the conductor in charge of a railroad passenger train has the right to eject a passenger from the car when such passenger refuses to comply with a reasonable regulation that is sought to be enforced for the proper, safe, and efficient conduct of the business.   Responsibility for the enforcement of such regulation must rest with those who are in control of the business.   In this case such duty was imposed on the conductor who was in charge of the car, and it devolves upon passengers to comply with the conductor's enforcement of the rule if they can reasonably do so.   "In such cases, as in others, it would not comport with the comfort and convenience of the passengers, nor always with their safety, for some of them to assert their rights with a strong hand.   And the safety and comfort of the passengers generally are not to give way to the safety or convenience of one or of a few."   *Bass v. C. & N. W. R. Co.* 36 Wis. 450, 462.   It is plain that the conductor of the street car in question was vested with the authority of the company to enforce the provisions of this regulation and that it was incumbent on plaintiff to comply with the conductor's request to step into the car, unless the facts and circumstances of the case show that he could not do so.   The trial court submitted the inquiry to the jury whether the plaintiff "ought, as a reasonably careful and prudent person, to have entered the car" when the conductor requested him to do so.   This direction to the jury is the equivalent of vesting the plaintiff with the right to determine whether or not ordi-

nary care and prudence required him to comply with the regulation under the facts and circumstances, and runs counter to the right and authority of the conductor to enforce the regulation. The facts and circumstances shown by the record did not justify plaintiff in refusing to comply with the request of the conductor to step into the car. It appears without contradiction that the car in question had an inside aisle capacity of standing room for at least thirty passengers and that at the most not to exceed fifteen passengers occupied this space when plaintiff refused to comply with the regulation. It also appears that the four passengers who entered the car with the plaintiff readily passed into the aisle and that other passengers entered the aisle immediately after plaintiff refused to comply with the conductor's request and occupied room which had not been occupied by passengers leaving the car. It is obvious that there was standing room for plaintiff in the aisle of the car when the conductor requested him to step in. Under the conditions it was his duty to comply with the conductor's request or leave the car, and his wilful refusal to do either authorized the conductor to remove him from the car, and the attempted ejection under the circumstances was not an unlawful act on the part of the conductor. It is manifest that the conductor wholly failed to use sufficient force to overcome plaintiff's resistance and that plaintiff made no case for a wanton and reckless assault upon him. It is considered that the evidence fails to establish a cause of action and that the complaint must be dismissed.

*By the Court.*—The judgment appealed from is reversed, and the cause remanded to the circuit court with direction to award judgment dismissing plaintiff's complaint.