Bass vs. The Chicago & Northwestern R'y Co.

BASS vs. THE CHICAGO & NORTHWESTERN RAILWAY COMPANY.

MASTER AND SERVANT: RAILROADS. *(1-5) When railroad company liable in punitory damages for misconduct of its servant towards passenger.* (1) *General rule.* (2) *Case stated.* (3) *Ratification: evidence thereof; question for the jury.* (4, 5) *What constitutes notice to the company.*
EVIDENCE. (6) *Proof of notice.* (7) *Res gestæ.*
DAMAGES. (8) *Not excessive in this case.*

1. A master is liable in compensatory damages for injuries done by his servant acting within the scope of his employment; and, if the act is such that the servant would be liable in punitory damages if the action were against him, the principal is liable in damages of that character in case he authorized the act or subsequently ratified it — but not otherwise. *M. & M. R. R. Co. v. Finney*, 10 Wis., 388; *Craker v. Railway Co.*, 36 id., 657; *Bass v. Railway Co.*, 39 id., 636.

2. Plaintiff was a passenger upon a train of the defendant company, and, there being no vacant seat in any passenger car, except the smoking car and the rear or ladies' car, he entered the latter peaceably, without being forbidden or barred from entering it, by any officer or agent of the company; while he was there, and while the train was in motion, a brakeman seized him, and, without requesting him to leave the car, or offering him a seat elsewhere, forcibly ejected him from the car, upon the platform thereof, in a rude and violent manner, though without any intent to inflict bodily injury upon him, and using no more force than was necessary to get him out of the car. *Held*, that the injury was one which, in an action against the brakeman, would sustain a verdict for *punitory* damages.

3. Where a railroad company retained a brakeman in its service, and even promoted him to a position of greater responsibility, after notice of tortious acts committed by him against a passenger, for which he would be liable in punitory damages, there was no error in submitting to the jury (to be determined by special verdict), in an action against the company, the question whether it had ratified such acts.

4. Immediate notice (by whomsoever given) to the conductor of the train, of the brakeman's misconduct in such a case, is notice to the company; and if the conductor or other officer of the company, after such notice, disbelieves the charge made against the brakeman, still the retention of the latter in its service by the company will be at its peril of the fact.

5. A verified complaint, duly served, in an action against the company for the misconduct of its servant, is notice of such misconduct; and where, *after* such service, the servant is retained and promoted, these facts may be put in evidence to show ratification of his act.

6. Statements of the transaction complained of, made to the conductor of the train by a fellow-passenger of the plaintiff, a few minutes after its occurrence, are admissible in evidence to show notice.

7. A conversation between the plaintiff and the offending brakeman, following immediately upon the principal act complained of and serving to illustrate its character, *held* admissible in evidence as a part of the *res gestœ*.

8. An award of $2,500 for compensatory damages in this case, *held*, especially in view of the former verdicts herein, not to be so disproportioned to the injury sustained as to bear marks of passion, prejudice, partiality or corruption in the jury, and therefore not to be excessive.

APPEAL from the Circuit Court for *Rock* County.

This cause has been twice in this court on appeals from judgments for the plaintiff; and the reports thereof will be found in 36 Wis., 450, and 39 id., 636. The testimony on the three trials was substantially the same, and is sufficiently stated in reports of the case on the former appeals.

On the last trial, the jury found a special verdict in the form of answers to questions submitted to them by the court. Those questions and answers are as follows:

" 1. Did the plaintiff, while riding in the smoking car, see the conductor; and did he make any complaint to the conductor that the smoking car was offensive; or did he request the conductor or any brakeman to furnish him a seat in another car? No.

" 2. Did the plaintiff request the brakeman to give him a seat, or make known to him that he wished to be provided with a seat, before he entered, or attempted to enter, the ladies car? No.

" 3. Were there any vacant seats in the gentlemen's car at the time the plaintiff came through the same at Oshkosh, or at any time thereafter before he entered the rear car? No.

" 4. Did the plaintiff enter the rear car peaceably, and without being forbidden or barred from entering the same by the brakeman, or any other officer or servant of the defendant? Yes.

" 5. Did the defendant's brakeman request the plaintiff to leave the rear car, before proceeding forcibly to eject him therefrom? No.

" 6. Was the plaintiff in the rear car when the brakeman seized the plaintiff for the purpose of ejecting him therefrom? Yes.

" 7. Did the brakeman willfully and in a forcible, rude and violent manner, force the plaintiff out of the rear car of the train, onto the platform thereof, while the train was in motion? Yes.

" 8. Were there any vacant seats in the rear or ladies' car when the plaintiff entered the same, and when the plaintiff was forced out of the same by the brakeman? Yes.

" 9. Did the brakeman, before forcing the plaintiff out of the rear or ladies' car, proffer the plaintiff a seat in any other part of the train? No.

" 10. Was the conductor, within a few minutes after the occurrence, informed that the plaintiff had been forcibly ejected from the rear or ladies' car by the brakeman? Yes.

" 11. Had the defendant company notice and information of the fact that the plaintiff had been forcibly ejected from the car? If yea, at what time after the occurrence did it receive such notice and information? Yes. On or about the 11th day of June, A. D. 1872.*

" 12. Did the defendant company, after it had notice that the brakeman had committed the assault on the plaintiff and wrongfully ejected him from the car, retain said brakeman in its service, and promote him to a higher position? Yes.

" 13. Did the defendant retain the brakeman in its service, and promote him to a higher position, with knowledge that he had assaulted the plaintiff and forcibly ejected him from the car, in the manner and under the circumstances alleged in the complaint in this action? Yes.

" 14. Did the defendant ratify the act of its brakeman in

*The date of service of the summons and compl int in this action.—REP.

forcibly ejecting the plaintiff from the ladies' car? Yes.

" 15. Did the brakeman forbid or refuse the plaintiff permission to enter the ladies' car before the plaintiff entered or attempted to enter the same, and refer him to the conductor to obtain such permission, or request him to wait until the conductor should come along? No.

" 16. Where was the plaintiff with reference to the front doorway of the car, when the brakeman began to resist or make physical opposition to the plaintiff's entrance into the car? Between the door and the first seat.

" 17. Did the plaintiff have express permission or license from the conductor or brakeman to enter the ladies' car? Not before he was ejected from the car. No.

" 18. Did the brakeman use any more force than was necessary to prevent the plaintiff from occupying the ladies' car? No.

" 19. Did the witness Klingingsmith have any duties to perform in connection with this train? No.

" 20. Did the brakeman intend to inflict any physical or bodily injury upon the plaintiff? No.

" 21. Did any officer of the defendant corporation have any knowledge or information as to the facts of this case, prior to the commencement of this action? Yes.

" 22. If, upon the facts found by us, the court shall be of opinion that the plaintiff is entitled to recover, and that compensatory damages only can be recovered, then we find that the plaintiff is entitled to recover herein, as compensatory damages, the sum of twenty-five hundred dollars.

" 23. If, upon the facts found by us, the court shall be of opinion that the plaintiff is entitled to recover compensatory damages, and shall also be of opinion that the plaintiff may, in our discretion, recover, in addition to compensatory damages, exemplary or punitory damages, we find that the plaintiff ought to recover herein such exemplary or punitory damages in addition to compensatory damages, and we assess such punitory damages at the sum of two thousand dollars."

The rulings and instructions of the court on the trial are sufficiently stated in the opinion.

A motion to set aside the verdict, and for a new trial, was denied; and judgment for the plaintiff was rendered upon the verdict for $4,500 damages, and for costs. The defendant appealed from the judgment.

*Wm. Ruger*, for the appellant, argued among other things, 1. That the conversation which, according to plaintiff's testimony, occurred between him and the brakeman, after the former " had cooled down a little," was inadmissible in evidence. *M. & M. R. R. Co. v. Finney*, 10 Wis., 388 (391); *Livesley v. Lasalette*, 28 id., 38 (39); *C. & N. W. Railway Co. v. Fillmore*, 58 Ill., 265; *Bellefontaine Railway Co. v. Hunter*, 33 Ind., 335, 354–5. 2. That the testimony as to what was said to the conductor by a stranger, concerning the acts complained of, after their occurrence, was inadmissible upon all the grounds assigned in the objection to it, viz.: (1.) Because it did not tend to show that the conductor acquired knowledge that plaintiff's version of the facts was true, nor even of what plaintiff's version was; and without such knowledge he could not ratify his acts. Wharton on Agency, § 65; *Ætna Ins. Co. v. Iron Co.*, 21 Wis., 464–5; *Betts v. F. L. & T. Co.*, id., 82, 83, 86; *Kneeland v. Gilman*, 24 id., 41–2; 25 id., 559; *Dickinson v. Inhabitants etc.*, 12 Allen, 487; *Adams v. Freeman*, 9 Johns., 117. (2.) Because, the conductor having no authority to discharge brakemen without the direction of the division superintendent, knowledge or approval by the conductor of the brakeman's conduct, was immaterial. Wharton on Agency, §§ 183–4, 671–3; *M. & M. R. R. Co. v. Finney*, 10 Wis., 392; *Walworth Co. Bank v. F. L. & T. Co.*, 14 id., 325; *C. & N. W. Railway Co. v. James*, 22 id., 194; *Chapman v. Railway Co.*, 26 id., 303; *Gleason v. Transp. Co.*, 32 id., 95–6; 2 Coms., 481–3; *Hill v. Railroad Co.*, 11 La. An., 292; *N. O., O. & G. W. Railroad Co. v. Williams*, 16 id., 315. (3.) Because the complaint does not lay a

foundation for such evidence.*   Plaintiff " should stand or fall with the right which he made the foundation of his suit." *Newton v. Allis*, 12 Wis., 380; *Baird v. Dunning*, 11 id., 68; *Brayton v. Jones*, 5 id., 117, and appendix, 627; *Larkin v. Noonan*, 19 id., 89; *Board of Supervisors v. Decker*, 34 id., 378.   This complaint was framed to charge a breach of the contract of carriage, under *Railroad Co. v. Finney, supra*. It does not allege that defendant has participated in or approved either the motives or the acts of the brakeman, or has ever acquired knowledge of them, or even that the brakeman's acts were prompted by malice.   It was therefore insufficient to state a cause of action *ex delicto*, and must be construed as counting on the breach of contract.   The servant's *acts* are set forth, but only to show the character of the breach of contract. Wharton's Law of Neg., § 23; *Rothe v. Rothe*, 31 Wis., 572–3; *Craker v. Railway Co.*, 36 id., 669–675; *Railroad Co. v. Finney, supra*.   And amendments changing a cause of action *ex contractu* to one *ex delicto* are not allowed after judgment, where the evidence was objected to; nor would such an amendment be allowed before trial.   Tay. Stats., 1446, § 41; *Shernecker v. Thein*, 11 Wis., 556; *Newton v. Allis*, 12 id., 378; *Sweet v. Mitchell*, 15 id., 664, and 19 id., 528–9; *Larkin v. Noonan*, 19 id., 82; *Dole v. Northrop*, id., 252.   3. That the same objections are applicable to the testimony given at the last trial concerning the proofs on plaintiff's part at the former trial.   That testimony was intended to show that defendant then acquired knowledge of the brakeman's acts, and ratified them by retaining him in its service.   It was immaterial and irrelevant.   (1.) It had no tendency to show that any officer of the defendant company, *having authority to discharge the brakeman*, ever knew the character of those proofs.   (2.) The complaint did not charge a ratification.   (3.) The evidence tended, at most , only to show a ratification *after suit brought*.

* The substance of the complaint will be found in 36 Wis., on pp. 451–2. — REP.

Plaintiff could avail himself of such matters only by serving a *supplemental complaint*, on leave; and such leave will not be granted to enable a party to substitute a different cause of action or defense. *Noonan v. Orton*, 21 Wis., 289; *Orton v. Noonan*, 29 id., 544-6. 4. That the court erred in its instructions and rulings in respect to punitory damages. (1.) The complaint laid no ground for the allowance of such damages, even against the brakeman; still less against the company. See 2 (3) and 3, *supra*. (2.) The evidence did not tend to prove any malice on the brakeman's part, but the contrary. (3.) It was shown, beyond any dispute, that none of the defendant's officers except the solicitor was ever informed of either the plaintiff's or the brakeman's version of the facts; that the solicitor had no power to discharge the brakeman; and that he directed the defense of the suit, relying upon the brakeman's statement as true, and being assured by the conductor, an old and trusty servant of the company, that the brakeman was a reliable man. The evidence did not tend to show any malice on the part of the company, or any knowledge or approval by it of such acts as the plaintiff alleges. Upon such evidence it was error to submit to the jury the question of ratification. *M. & M. Railroad Co. v. Finney*, 10 Wis., 392; *Walworth Co. Bank v. F. L. & T. Co.*, 14 id., 325; *C. & N. W. Railway Co. v. James*, 22 id., 194; *Chapman v. Railway Co.*, 26 id., 303; *Gleason v. G. T. Co.*, 32 id., 94-6. (4.) A master does not become liable to punitory damages by subsequently ratifying an unauthorized malicious act of his servant. (a) Whatever loose and inaccurate expressions upon the subject may appear in some cases, the better decisions clearly show that punitory damages are allowed, not to punish mere wrongful acts themselves, but to punish the *evil motive*, or malice, which prompted them, whether inferred from the acts or otherwise proven. *Mc Williams v. Bragg*, 3 Wis., 431; *M. & M. Railroad Co. v. Finney*, 10 id., 391-3; *Barnes v. Martin*, 15 id., 245-6; *Pickett v. Crook*, 20 id., 359; *Morely v. Dunbar*, 24

id., 186–7; *Hooker v. Newton*, id., 292–4; *Hamlin v. Spauld-ing*, 27 id., 363–4; *Bonesteel v. Bonesteel*, 30 id., 513–14; *Craker v. Railway Co.*, 36 id., 675–8; *Leavitt v. Cutler*, 37 id., 51–2; *Plath v. Braunsdorff*, 40 id., 111–12.   (b) Malice is punishable only when it prompts or causes a legal in-jury.   If A., seeing B. unjustifiably strike C., should after-wards express approval, he would not thereby render himself liable to an action.   So, if a wad from A.'s gun sets fire to his neighbor's premises, A. not intending any such result and if, being some time afterwards informed of the fact, A declares that, although he did not intend or think of such a result, he is glad that it ensued, he cannot be charged on that ground with a malicious burning.   His *subsequent* malice is immaterial.   (c) The law never *punishes* a man for the of-fense of another.   Principals therefore are not punishable for the malice of their agents, but only for their own malice.   And malice is not imputed to the principal as a presumption of law founded on the relation of the parties.   That would be unreasonable, and contrary to the presumption of innocence which the law indulges in favor of all.   *M. & M. Railroad Co. v. Finney*, 10 Wis., 393; *Craker v. Railway Co.*, 36 id., 676.   (d) If principals are punished for personal malice only, and if the subsequent malice even of the wrongdoer himself is immaterial, it follows that the subsequent malice of the master is immaterial.   If the after malice of the servant and actual wrongdoer does not relate back to the act, the after mal-ice of the master cannot.   *Levey v. Fargo*, 1 Nev., 420; *Adams v. Freeman*, 9 Johns., 118; *Wallsworth v. McCullough*, 10 id., 93; *Grund v. Van Vleck*, 69 Ill., 478–9, 481.   (5) The court permitted the jury to award punitory damages in case the de-fendant knew and approved the brakeman's *acts*, if such acts were "*willful*, or there was a deliberate, preconceived or posi-tive intention to injure, *or reckless disregard of the person of the plaintiff*."   If subsequent approval of a servant's malicious acts will render a master liable for such acts and

malice, as having been made his own, *nunc pro tunc*, by adoption, still there cannot be such a ratification without knowledge of both the servant's *acts* and *malice*. Authorities *supra*. And since any act done with the assent of the will is willful, the latter word is misleading, and would not be understood as requiring a finding of malice. 10 Wis., 392; 36 id., 676; Russell on Crimes, 67–8; 60 Pa. St., 63. (6) Portions of the charge assume that the law presumes such a ratification as would make the defendant liable to punishment, if it retained the brakeman in service and appointed him baggageman, with knowledge of his acts. (a) It has never been ruled that the law makes any presumption on such facts; and such a ruling would be against public policy — in conflict with the most salutary rules of the law of evidence, and with the presumption of innocence which the law indulges in favor of all. (b) If such a presumption were justifiable, it would not arise in this case, for the reason that the predicate facts are not established by direct evidence. There is no direct evidence of malice on the brakeman's part, nor of knowledge of either his acts or malice, if any, on defendant's part. The presumption of approval would therefore rest on presumptions of malice on the part of the brakeman, and of knowledge on the defendant's part. Presumptions cannot be founded upon presumptions. Wharton on Ev., § 1226, and note 3; Starkie on Ev., 80. (c) If the law made such a presumption, it would be rebuttable, and rebuttable presumptions have not the force of testimony. When satisfactory proofs in rebuttal are made, the presumption does not stand as opposed to the proofs, to make a question for the jury; but the presumption falls, and the facts proven must be recognized by the court as uncontradicted. *Nowell v. Pratt*, 5 Cush., 111; *Spaulding v. Railway Co.*, 30 Wis., 121–3; Best on Ev., § 314. The positive, uncontradicted testimony on defendant's part shows that none of its officers whose approval would be deemed its approval, had knowledge that

the brakeman had been guilty of any *malice* or of the *acts* testified to by the plaintiff; and shows also, that such officers did not, in fact, approve such acts or malice, if the brakeman was guilty of them. This testimony is amply sufficient to rebut such a legal presumption; but the court not only failed to recognize its sufficiency, but excluded it from consideration by the jury. (7) The testimony did not justify the court in authorizing the jury to find a ratification as a presumption of fact. Presumptions of fact are logical deductions of fact from fact. To justify them, the testimony must have such probative force as to make the existence of the ultimate fact in question probable. 12 Wis., 257–9; Wharton on Ev., § 1226. Concede, first, that the brakeman was guilty of the acts charged, and that such acts were prompted by malice; second, that his general conduct had been good, and that he was guilty of misconduct in this one instance only; and third, that defendant retained him in its service and appointed him baggageman, with knowledge of such acts and malice. Do these facts have any tendency to show approval by defendant of such acts and malice? This question, like that of the materiality of testimony, is for the court. And is it not against reason to infer that defendant, a common carrier of passengers competing for public patronage, would approve of misconduct so clearly prejudicial to its interests? · The only logical conclusion is, that defendant retained this brakeman because of his general good conduct, and from motives of humanity. Masters cannot expect perfection in servants, and they ordinarily overlook many instances of misconduct in view of general good conduct, and of the fact that they are not likely to better themselves by making a change. The fact that the brakeman was relieved from duty as such, and assigned to duty as baggageman, strengthens the inference that defendant was influenced by motives of humanity in dealing with him, and also clearly tends to show disapproval of such misconduct, assuming that he was guilty and that defendant had

knowledge of it.   Brakemen and baggagemen receive the same pay; and if the latter position is preferable, it is because its duties are easier, and do not necessitate exposure.   This brakeman was in ill health.   He served as baggageman until February 9, 1874, and died of consumption on the 12th of March following.   Brakemen have constant intercourse with passengers, while train baggagemen have no intercourse with them. In view of these facts, it is an affront to common sense to argue that the appointment of this brakeman to the position of train baggageman as the winter approached, tended to show that defendant approved of misconduct toward a passenger occurring six months before.   Best on Ev., §§ 319-20; 30 Barb., 575; 30 Vt., 602-3; 12 Wis., 257-9.   If the reasons for imputing good and those for imputing evil motives to the defendant had been in equilibrium, the court should have held that the testimony had no probative force to show that defendant retained the brakeman from evil motives, and should not have submitted that question to the jury; *a fortiori* should this have been the ruling where both the logic of the facts and the legal presumption of innocence negative the evil motives.   *Pleasants v. Fant*, 22 Wall., 116; *Toomey v. Railway Co.*, 91 E. C. L., 148-9; *Colton v. Wood*, 98 id., 570-72; *Hammersmith v. White*, 103 id., 588; *Welfare v. Railway Co.*, L. R., 4 Q. B., 693, opinion of COCKBURN, C. J.   5. That specific questions of fact, essential in the cause, were not properly submitted to the jury for determination by special verdict, and the specific *facts* found by the jury are not sufficient to sustain the judgment.   A special verdict must find *facts only*, and should find *every essential fact*.   14 Pa. St., 91; *Bates v. Wilbur*, 10 Wis., 415; *Everit v. Bank*, 13 id., 421; 41 id., 74, 552, and cases there cited. The questions submitted did not require the jury to find whether there was malice on the brakeman's part; whether there was participation in such malice by the defendant; whether any officer, *having authority to discharge the brakeman*, had knowledge that he was guilty of the misconduct tes-

tified to by the plaintiff; whether such officer intended to, or did *in fact*, approve such misconduct. The 13th and 14th question submitted involved a determination of questions of law, viz.: first, what officers of the company are such that *their knowledge* was *knowledge of the company;* and secondly, what acts or facts would constitute a *ratification* by the company. And the court refused to submit, at defendant's request, questions requiring the jury to find the specific facts.	6. That there was no sufficient evidence to sustain the 7th, 11th, 13th, 14th, and 21st findings; and the court erred in refusing a new trial upon that ground.	7. That the compensatory damages were excessive. *Goodno v. Oshkosh,* 28 Wis., 301, 304-6; *Spicer v. Railway Co.,* 29 id., 580; *Patten v. Railway Co.,* 32 id., 524, 535-6; *Bass v. Railway Co.,* 39 id., 639–41; *I. C. Railroad Co. v. Johnson,* 67 Ill., 315; *I. C. Railroad Co. v. Cunningham,* id., 316; 19 Ohio St., 160–62; 34 Cal., 618–19, 623.

Briefs were filed by *J. W. Bass,* the respondent, and the cause was argued orally in his behalf by the respondent in person, and by *David Taylor.* They contended, in substance, 1. That when the jury found that there were no vacant seats in the gentlemen's car, and that plaintiff entered the rear car peaceably and without being forbidden or barred from entering, and that there were vacant seats in such rear car (3d, 4th and 8th findings), this was sufficient to determine, under the former decision in this cause, that plaintiff had a right to remain in that car, and that his ejection by the brakeman was a legal wrong for which he could recover compensatory damages in this action.	2. That when the jury further found that the brakeman, without requesting plaintiff to leave the rear car, willfully and in a rude and violent manner (though without intending to inflict any physical injury upon him) forced him out of that car upon the platform, while the train was in motion (5th, 7th and 20th findings), this made a case in which the jury might allow *punitory* damages in a suit against the brakeman himself, within the former decision in this cause.

See also *Fuller v. C. & N.·W. Railway Co.*, 31 Iowa, 187. 3. That when the jury further found that this defendant, with notice, information and knowledge of the assault committed on the plaintiff, and of his wrongful ejection from the car under the circumstances set forth in the complaint, retained the brakeman in its service, and even promoted him to a higher position, and ratified his act (11th, 12th, 13th and 14th findings), this made a case in which the jury might allow punitory damages against the defendant, under the former decision herein. See also *Goddard v. G. T. Railway Co.*, 2 Am. R., 39; *Hanson v. Railway Co.*, 16 id., 404; *Palmer v. Railroad*, id., 750; and the authorities cited in these cases.

LYON, J. In the case of the *Railroad Co. v. Finney*, 10 Wis., 388, it was said that, although a principal is liable to the extent of compensatory damages for a malicious injury inflicted upon another by his agent acting within the scope of his employment, yet he is not liable to exemplary or punitory damages, unless he directed the injurious act to be done, or subsequently confirmed it. But if the principal directed the act, or, not directing it, if he subsequently adopted or confirmed it, the rule is recognized that he is liable to punitory damages.

On the first appeal in the present case (36 Wis., 450), the rule of damages was much discussed, but was not then determined by the court, the judgment going upon another ground. But in the case of *Craker v. The Railway Co.*, id., 657, decided at the ensuing term, the rule stated and recognized in *Railroad Co. v. Finney* was, after mature consideration, held to be the true rule; and it was sanctioned and followed in this case on the second appeal. 39 Wis., 636. That the rule was thus correctly settled, we entertain no doubt whatever.

If, therefore, the brakeman of the defendant ejected the plaintiff from the car under circumstances which would authorize an assessment of punitory damages were the action

against him, the defendant may be held for like damages in this action, if, with notice or knowledge of the conduct of its brakeman, it adopted or confirmed his acts.

(As to what will amount to a ratification or adoption by the principal of the wrongful act of the agent or servant, it was said in *Craker v. The Railway Co.*, that " responsibility for exemplary damages in cases of ratification will be an admonition for the prompt dismissal of offending officers, as their retention might well be held evidence of ratification." p. 676. And when this case was here on the second appeal, it was held that, because the testimony tended to prove that the defendant retained the brakeman in its service, and promoted him to a position of greater responsibility, after notice that he had committed the wrongs complained of, it should have been submitted to the jury, under proper instructions, to determine whether there had been a ratification by the defendant of the wrongful acts of its brakeman. 39 Wis., 642. These decisions establish the proposition (and it is probably *res adjudicata* in this case), that if the defendant retained the brakeman in its employment, and especially if it promoted him in its service, with knowledge that he had assaulted the plaintiff and forcibly ejected him from the car under the circumstances stated in the complaint, that is or may be such a ratification or adoption by the defendant of the wrongful act of the brakeman, as will authorize the imposition of punitory damages in this action.

We are now to inquire whether the facts specially found by the jury are sufficient to sustain the judgment for punitory damages, and, if so, whether those findings are supported by the evidence. The jury found that there were no vacant seats in the gentlemen's car; that the plaintiff entered the rear or ladies' car peaceably, without being forbidden or barred from entering the same by any officer or servant of the railway company; that, while in said car, the brakeman seized the plaintiff, and, without requesting him to leave the car or offering

him a seat elsewhere, forcibly ejected him from the car in a rude and violent manner, and when the train was in motion; that there were vacant seats in the ladies' car; that some officer of the defendant company had knowledge of the facts of the case before this action was commenced, and the company itself received such notice and information on the day the action was commenced; that the company retained the offending brakeman in its service, and promoted him to a higher position, with knowledge that he had assaulted the plaintiff and forcibly ejected him from the car in the manner and under the circumstances alleged in the complaint; and that the defendant ratified such acts of its brakeman. The jury also found that the brakeman used no more force than was necessary to prevent the plaintiff from occupying the ladies' car, and that he did not intend to inflict bodily injury upon the plaintiff.

We think these findings are sufficient to sustain a judgment for punitory as well as compensatory damages against the defendant, within the rule on that subject above stated. The forcible expulsion of the plaintiff in a rude and violent manner, when the train was in motion and without any request to him to leave the car, notwithstanding the brakeman did not intend to injure him, and used no more force than was necessary to get him out of the car, would be sufficient ground for assessing punitory damages against the brakeman, were the action against him; and the retaining of the offending brakeman in its service after notice of the facts is, under the circumstances of the case, an adoption or confirmation of the acts of the brakeman by the defendant, which renders it liable for like damages.

Are the findings supported by the evidence? The correctness of the finding that the defendant had notice of the wrongful act of its brakeman, as found by the jury, is challenged by the learned counsel for the defendant. But the testimony tends to show that, immediately after the plaintiff was ejected

from the car, the conductor of the train was informed by a passenger of what had occurred — was told that the plaintiff, notwithstanding his crippled condition, had been kicked out of the car like a dog. It was held on the first appeal in this action (36 Wis., 463), that, as to passengers on trains, the officers in charge of them are to be considered as the corporation itself, and that the corporation is responsible for the acts of such officers in the conduct and government of its trains to the same extent that the officers would be liable were they the owners of the railroads. A qualification of this doctrine in respect to liability for punitory damages is stated in the Craker case; but it does not affect the question under consideration. It requires no affirmative testimony to prove that the conductor of a passenger train is the officer to whose charge the railway company has committed the train; and clearly, within the doctrine above stated, immediate notice to the conductor in charge of the train, that a wrong has been inflicted upon a passenger by one of his (the conductor's) subordinates, is notice to the corporation. This is so, because the whole power and authority of the corporation as to passengers on the train is vested in the commanding officer of the train, and it is quite immaterial whether such officer has or has not power to discharge the offending subordinate, or whether he does or does not report his information to his superior officer. It is also quite immaterial whether the conductor or his superior officers did or did not believe the information received by him or them. When the defendant, through its conductor, was informed (it matters not by whom) that its brakeman had committed a great personal outrage upon the plaintiff, it retained the brakeman in its service at its peril of the fact. By thus retaining him, it adopted and confirmed his act, whatever it was, and assumed the liabilities resulting therefrom.

But even were notice to the conductor insufficient to charge the defendant with notice, a verified complaint in this action, which contains a statement of the wrongs inflicted upon the

plaintiff, was served within a few days after the cause of action arose; and certainly that was notice to the defendant of the facts therein stated. Notice at the time or after the action was commenced, may be as effectual to fix the liability of the defendant to punitory damages, as notice before the action was commenced. And, because notice and ratification are not the grounds of the action, or of any claim for special damages, but are merely incidents which may affect the amount of general damages to be recovered, we think it was not necessary to allege the same in the pleadings. In these respects the case is not unlike an action for slander or libel, in which it is always competent for the plaintiff to show the express malice of the defendant in the words or publication complained of, for the purpose of increasing damages; and the weight of authority seems to be, that to this end he may show a repetition of the alleged libel or slander by the defendant, as well after as before the commencement of the action. (Townshend on Libel and Slander, § 395, and cases cited.) And, doubtless, he may make this proof without alleging in his complaint such repetition of the defamatory words. At least, we are aware of no rule of pleading which requires such an allegation.

We conclude, therefore, that there is sufficient testimony to support the finding that the defendant had notice of the wrongful acts of its brakeman before the action was commenced, and that the notice was repeated by the service of the complaint. The remaining special findings of fact require no discussion; for certainly there is testimony in the case tending to prove, and sufficient to support, each of them.

Certain rulings of the court on objections to the admission of testimony are assigned as error. One of these rulings was the admission of the statements made to the conductor concerning the transaction, soon after the plaintiff was ejected from the car. Another was the admission of a conversation between the brakeman and the plaintiff, immediately after the

plaintiff was ejected from the car, and while he was standing on the platform.

If notice of the acts of the brakeman given to the conductor was notice to the defendant company, it necessarily follows that statements of the transaction made to the conductor are admissible in evidence as tending to prove such notice. The conversation between the brakeman and plaintiff occurred almost immediately after the plaintiff's expulsion from the car, and under circumstances from which we think it may be fairly inferred that it was a part of the transaction itself — that it pertained to the *res gestœ*. The conversation, however, does not seem to be of much importance in the case.

A single other ruling on the admissibility of testimony is alluded to in the brief of counsel; but the testimony admitted is of little or no consequence in the case, and could not have influenced the jury one way or the other. It is unnecessary further to consider it.

Many exceptions were taken to the charge of the judge, and to his refusals to give the jury certain instructions, and to submit to them certain specific questions of fact, proposed on behalf of the defendant. To discuss these in detail would be tedious and unprofitable. It is quite sufficient to say that, after careful consideration, we are satisfied that the rulings and instructions are in substantial accord with the views above expressed, and that the questions of fact submitted to the jury covered and included the whole issue, and were sufficiently specific.

It only remains to determine whether the compensatory damages assessed by the jury are excessive. On the first trial of the action, the verdict, under instructions which allowed the jury to assess exemplary damages, was for $4,500. On the second trial, under an instruction which confined the jury to give only compensatory damages, the verdict was for the same sum. On the last trial, the jury assessed the compensatory damages at $2,500, and the exemplary damages at

$2,000. In reversing the judgment upon the second verdict, we did not indicate (as had been done in some other cases) a sum above which we thought the jury ought not to go in their assessment. While, perhaps, we formed no definite opinions on that subject, we were convinced that an award of $4,500 for merely compensatory damages was excessive, under all the circumstances of the case. These damages have now been reduced nearly one-half, and, although the amount is still large, perhaps larger than we should award were it our duty to make the assessment, yet, in view of the previous verdicts, and upon due consideration of all the facts found by the jury, we are not prepared to say that the sum awarded is so disproportioned to the injury sustained as to bear marks of passion, prejudice, partiality or corruption on the part of the jury. Because we cannot say this, we cannot disturb the judgment on the ground that the damages are excessive. See *Birchard v. Booth*, 4 Wis., 67, and cases cited in Vilas & Bryant's notes (p. 97, new ed.).

Finding no material error in the record, we must affirm the judgment of the circuit court.

RYAN, C. J. I have always regretted that this court adopted the rule of punitory damages in actions of tort. In the controversy between Prof. Greenleaf and Mr. Sedgwick, I cannot but think that the former was right in principle, though the weight of authority may be with the latter. It is difficult on principle to understand why, when the sufferer by a tort has been fully compensated for his suffering, he should recover anything more. And it is equally difficult to understand why, if the tortfeasor is to be punished by exemplary damages, they should go to the compensated sufferer, and not to the public in whose behalf he is punished. The reasons against punitory damages are peculiarly applicable in this state, since the just and broad rule of compensatory damages sanctioned by this court in *Craker v. Railway Co.*, 36 Wis.,

AUGUST TERM, 1877.                                    673

Bass vs. The Chicago & Northwestern R'y Co.

657. But the rule was adopted as long ago as 1854, in *Mc-Williams v. Bragg*, 3 Wis., 424, and has been repeatedly affirmed since. It is therefore too late to overturn it by judicial decision. That could well be done now by legislative enactment only.

When this case was first here, it was said of the officers of railroad trains: "They act on the peril of the corporation, and their own. Indeed, as that fictitious entity, the corporation, can act only through natural persons, its officers and servants, and as it of necessity commits its trains absolutely to the charge of officers of its own appointment, and passengers of necessity commit to them their safety and comfort *in transitu*, under conditions of such peril and subordination, we are disposed to hold that the whole power and authority of the corporation, *pro hac vice*, is vested in these officers; and that, as to passengers on board, they are to be considered as the corporation itself; and that the consequent authority and responsibility are not generally to be straitened or impaired by any arrangement between the corporation and the officers; the corporation being responsible for the acts of the officers in the conduct and government of the train, to the passengers traveling by it, as the officers would be for themselves, if they were themselves the owners of the road and train. We consider this rule essential to public convenience and safety, and sanctioned by great weight of authority." *Bass v. Railway Co.*, 36 Wis., 450.

The rule here suggested would undoubtedly justify punitory damages against a railroad company for the tort of an officer of its train to a passenger, whenever it should be liable for the tort itself, and the nature of the tort would warrant such damages against the officer himself.

But, a few months later, when the rule of damages in such case was more directly involved, the rule suggested in *Bass v. Railway Co.* was qualified. It was then remarked: "It is said in *Railroad Co. v. Finney*, that the plaintiff in such a case

is not entitled to exemplary damages against the principal for the malicious act of the agent, without proof that the principal expressly authorized or confirmed it. Without now discussing what would or would not be competent or sufficient evidence of such authority or confirmation, we may say that we have, on very mature consideration, concluded that the rule in *Railroad Co. v. Finney* is the better and safer rule. We are aware that there is authority, and perhaps the greater weight of authority, for exemplary damages in such cases, without privity of the principal to the malice of the agent, and that reasons of public policy are strongly urged in support of such a rule.......But we adhere to what is said on that point in *Railroad Co. v. Finney*. We think that, in justice, there ought to be a difference in the rule of damages against principals for torts actually committed by agents, in cases where the principal is, and in cases where the principal is not, a party to the malice of the agent. In the former class of cases, the damages go upon the malice of the principal: malice common to principal and agent. In the latter class of cases, the recovery is for the act of the principal through the agent, in malice of the agent not shared by the principal; the principal being responsible for the act, but not for the motive of the agent. In the former class, the malice of the principal is actual; in the latter, it must at most be constructive. And we are inclined to think that the justice of the rule accords with public policy. Responsibility for compensatory damages will be a sufficient admonition to carrier corporations to select competent and trustworthy officers. And responsibility for exemplary damages, in cases of ratification, will be an admonition to prompt dismissal of offending officers, as their retention might well be held evidence of ratification. The interest of these corporations and of the public, in such matters, should be made alike as far as possible. And we hold the rule, as we have stated it, the justest and safest for both." *Craker v. Railway Co.*, 36 Wis., 657.

So it is seen that, while the court modified the rule of recovery, mainly upon the ground of public policy, though partly out of consideration for railroad companies themselves, it still considered that when the corporation is liable for torts of officers of trains to passengers, not expressly authorized, it would be, *stricti juris*, liable for punitory as well as compensatory damages. And the rule was modified as an inducement to railroad companies not to uphold torts of their officers, but to absolve themselves from punitory damages by removing the offenders, as a protection to the public against oppression by persons operating passenger trains.

So, in *Craker v. Railway Co.*, where the tortious officer was promptly dismissed, the court sanctioned compensatory damages only. So, in this case, where the tortious officer was retained, the court sanctions punitory damages as well. In the one case, the dismissal of the offending servant was held to be a disavowal of the act, purging it of malice as against the corporation. In the other, the retention of the offending servant is held as an avowal of his act, charging the corporation with his malice. It is difficult to understand how the latter can be wrong, if the former be right. The dismissal operated as condemnation; the retention as justification.

It was argued that the appellant could not sanction the conduct of the brakeman, because it had no knowledge of it. The jury has found that it had, and I think rightly. Aside from the finding, I should be disposed to say so on the evidence. It is true that the corporation proper could have no knowledge of the brakeman's conduct, because it is an ideal entity, incapable of knowledge. But, in all its functions, it is always represented by officers charged with performance of them. The conductor was promptly notified of the conduct of the brakeman; and it was his duty promptly to dismiss his inferior, if he had power; or promptly to report him to his own superior having power. Notice to the conductor was notice to the corporation. It appears also that the attorney of the corporation

was afterwards charged, or charged himself, with inquiry into the facts. If he were seeking for the facts rather than for the justification of the tort, he seems to have shown somewhat less than a lawyer's sagacity, by accepting the statement of the tortious brakeman, verified only by a suggestion of his good character by the conductor, whose silent acquiescence in the tort had made him, *quoad* the appellant, almost as guilty as the brakeman, a *quasi particeps delicti;* both apparently interested in suppressing the truth, if the truth was against them. This looks very like indifference to the wrongs of the passenger, and sympathy with the offending officer. Certainly the corporation was put upon inquiry, with ample means of information. And this is equivalent to actual knowledge.

The learned counsel of the appellant made an ingenious and subtle argument, to show that ratification of the act of an agent cannot operate to ratify the motive of the agent; that though the principal may adopt the act, he cannot adopt the motive, because motive cannot be *ex post facto*.

I think it sufficient, in this case, to say that the corporation proper is incapable of motive, past or present; that it can intend or execute through its officers only, its motives and acts being always motives and acts of theirs; that, within the rule of *Bass v. Railway* and *Craker v. Railway*, the brakeman was *pro hac vice* the corporation — his motive, its motive — his act, its act; that its primary liability is for both motive and act; that public policy excuses its liability for the motive, except upon express or implied privity of its superior officers charged with the general control of its trains; that its liability for the offending officer's motive is suspended, chiefly as an inducement to dismiss him from the employment which he abused by his act; that its retention of him in his employment, after notice, makes it expressly privy to his motive; that its ratification of his act and motive is properly but a reaffirmance of its own, and only restores it to a liability for the motive, which had been suspended, in favor of public poli-

Bass vs. The Chicago & Northwestern R'y Co.

cy, to await its own action to its offending servant upon his tort.

Courts have had occasion to say, that philosophical distinctions are often too nice to enter into rules of judicial decision. So I might say of the metaphysical reasoning of the learned counsel, against the possibility of *ex post facto* intent. The difficulty suggested would enter into all ratification by principals of the acts of agents. The position is certainly unsound in law; if indeed it can be taken as quite sound in metaphysics.

When an agent does an act *ex contractu* for his principal, he intends to bind his principal. If without the scope of the agent's authority, the principal is not privy to either the act or the intent. When the principal ratifies the act, his ratification relates back to the time of the act, not upon the theory that the principal shared the intent of the agent at the time of the act, but that he afterwards, by present intent, adopts for his own the past intent of the agent to bind him. And the ratification makes the intent and act of the agent the intent and act of the principal; not from the time of ratification, but at the time of the intent and act of the agent. The principal is then as much a party to the intent and act of the agent, as if they had been his own at the time of them. And his intent *ex post facto* to bind himself by the act, at the time of the act, is recognized in law. The character of the intent makes no difference in the rule. Either *ex contractu* or *ex delicto*, ratification implies want of authority of the agent to act for the principal. Ratification supplies the authority, *nunc pro tunc*. When an agent is appointed to perform the duties of his principal to a third person, and is guilty of tort in the performance of the duty, and the principal afterwards ratifies the tort, he is held, not to have shared the motive of the agent at the time, but to adopt it as his own, by present intent, relating back to the time of the tort.

The motive of the tort is part of the tort. And ratification of the act, *scienter*, is ratification of the motive.

So, in law, an accessary after the fact is held privy to the antecedent crime of the principal. *Accessorius sequitur naturam sui principalis*. So, in morals, one who knowingly adopts the wrongful act of another, is justly held accountable, *in foro conscientiæ*, for its motive and its shame. And this is specially true when a superior ratifies the act of his inferior. In such a case, though the law may not reach it, morality applies the maxim, *respondeat superior*. So, even in metaphysics, it might perhaps be said that the mind of one who ratifies, goes back to the time of the act ratified, and thinks *nunc pro tunc;* is presently sensible of the circumstances as they happened, and of the operation of the actor's mind upon them at the time; is presently conscious of the actor's motive; and adopts the motive and the act, *nunc*, as truly as the actor thought and did, *tunc*. I speak as one inexpert, conscious of not being versed in mental philosophy, as counsel seems to be. I venture only to suggest the possibility that even metaphysics may recognize something in the nature of *ex post facto* motive.

Considered in an abstract philosophical view, it seems to me to be as difficult for the principal to do the act, as to intend the act, *nunc pro tunc*. Indeed, metaphysics, in the view of counsel, would probably exclude all agency, all responsibility upon the rule *quod facit per alium facit per se*. But the law, practically, sanctions what abstract theory denies. One may intend and act by another; and ratification of an act may operate as ratification of the motive of the act. The whole argument against ratification of the motive might go as well against ratification of the act. And it seems, indeed, to be but a variation of the argument so elaborately made by counsel, in *Craker v. Railway*, that a principal cannot be a party to the tort of an agent in the course of his employment,

because the tort is the voluntary act of the agent, to which the principal is not privy. In such a case, metaphysics might excuse the principal, but the law will not. I do not care, however, to repeat the grounds on which the court held the principal liable for the tort of the agent, in the discharge of the principal's duty to another. Counsel must take the rule as the law of this court, with all its consequences. And one of the consequences is the liability of railroad companies, in proper cases, to exemplary as well as compensatory damages, for torts of servants operating their trains, to passengers traveling on them. The warning to dismiss tortious servants in such cases cannot be made too emphatic. Carrier corporations must fulfill their duty to their passengers; and that cannot well be done by retaining in the performance of the duty, servants who abuse their trust by oppressing passengers committed to their care. If railroad companies neglect the warning, they must expect the consequences.

*By the Court,* — The judgment of the circuit court is affirmed.